Counsel, you may proceed. Thank you, Your Honor. I'm going to just reserve five minutes and reserve the last ten minutes for rebuttal purposes. You may do so, Counsel. First of all, introduce yourself for the record, and if you don't mind, speak a little louder so we can hear you. They're really designed so if you stay in the middle, it should be just fine. Thank you, Your Honor. Normally, I'm too loud, so I've been making a concerted effort to try to lower my voice. Okay. Karen Larson from Century Law Group, on behalf of Drs. Crowley and Drs. Flores. Very well. Thank you, Counsel. We're, of course, the appellants. In the five minutes, I think the issue here is a motion for summary judgment is whether the Court's decision took the area that's normally reserved for a jury to decide certain issues that he found for the defendant was constitute reversible error by, for example, on all of the causes of action. And I agree that if there is no fraud, cause of action is no rescission. So my argument is basically on the first two, breach of contract, the implied the breach of the implied covenant of good faith and fair dealing. This is all under New Jersey law. And the third one for fraud. And particularly in regards to the breach of contract and the implied, the breach of implied condition of good faith, I believe there are three areas that the judge erred in taking the case away from the jury. One was on the issue of ambiguity. Even the Court admitted that the issue that Eppeset raised, that this notice concerning improvements, that the language in the contract was very confusing and ambiguous and then decided against it. Is it your position that the interpretation of a written contract in California is a matter for the jury to decide? No, Your Honor. What are you talking about, about ambiguity? I mean, if there's ambiguity in the contract, it's to be interpreted by the judge on motion of summary judgment, right? Right. But this was being decided under New Jersey law and under Emerson. Under New Jersey law, is the issue of ambiguity in the interpretation of a contract for the jury? If there is sufficient ambiguity of a term, then it becomes. Let's speak a little louder. If there's a sufficient ambiguity on the – if the Court finds that there's ambiguity under Emerson, then the ambiguity must be resolved by the jury, Your Honor. And you're relying on Emerson for that? Yes, Your Honor. And I have the site right here. That's fine. I had a question also. It sounds to me as if both parties agree that under New Jersey law, if the plaintiff or the purported plaintiff has breached the contract in a material way, then they may not even sue on the contract. Is that a correct understanding of the party's description of New Jersey law? I don't interpret New Jersey law as such. But, of course, my position is that the contract itself was sufficiently ambiguous as to whether the issue of not giving notice to the improvements constitutes a sufficiently material breach to excuse performance by the plaintiff. Right. But it could be a not material breach for at least two reasons. One is that the contract doesn't require it. That's one possibility. So if the contract doesn't require it and you don't do it, it's irrelevant. And the other is that the contract requires it, but for one reason or another, the particular omission is not, in fact, material. And it seems to me that both of those would be open to a plaintiff under New Jersey law. Is that true or false? I believe it is true if I'm understanding the direction. And I want to get specific so I understand the question. Are we talking about the whole issue of whether Dr. Flores, in using the ointment in his home practice, his practice, had by modifying it was under an obligation under the improvement section to give notice to EPSA. Right. Okay. So we're on that. Number one, I think the issue of whether that constituted an improvement in section 1 was in conflict with Dr. Flores' rights to use the ointment as he always had prior to the practice, which included twerking it and modifying it. Under section 7.2. Yes, Your Honor. And also, if you look at the definition of what constituted material breach is to trigger termination, there is nothing in section 10 that talks about that failure to give a notice of an improvement constituted a default of the contract or a breach of the contract allowing EPSA all its rights. The whole concern that EPSA had in the contract and in the testimony outside was that our clients not do something to exploit the invention and not release information about this ketamine. I mean, this was my clients had come up with a use of ketamine on the surface of the skin that could relieve pain for chronic pain, you know, people addicted or to avoid addictions and so forth. So it was very important to EPSA that they not release this confidential information, that they not take advantage, not use commercially. My clients didn't do that. So this whole EPSA now says on appeal, and, of course, this was never even raised as a defense. The first time we even heard of this argument was during the summary judgment that my clients could lose all their rights and control over their patents because Dr. Flores, who thought he was using the ketamine as he triggered a default, that he should have given them notice within 10 days and then on the basis of that, EPSA can keep these patents for 19 years, not do anything, decide not to do anything because Dr. Flores, thinking he had always done this the way he had done it, didn't give notice that in 10 days he had twerked part of the formula. Even in the, that's such an unreasonable interpretation. I don't, and perhaps it's my fault for not arguing, I don't see that that's New Jersey law, that that constituted sufficient breach the way my client's rights to a breach of contract. Did you argue lack of materiality in the district court? I don't recall, Your Honor. If I can't recall, then I say I don't know. Did you provide any evidence in the form of declaration or affidavit? Well, I had the declaration. Pardon me. I'm sorry. That the failure to give notification for this experimental use by Dr. Flores had no economic significance sufficient to make it a material breach of the requirement under 10.12 or 2.12 notify? I know that in both my opening brief and my reply brief, I Pardon me. In the trial court, in your Oh, in the motion for summary judgment. Yes, we argued that that was, that it had never been raised as a defense. We had Dr. Flores and Dr. Crowley Pardon me. Doing declarations. Let me rephrase my question again. Could you give me a citation to the record so that I can see that you argued the point of materiality before the district court? That's what I'm after. I'm not after whether you argued it here in your brief. I'm not asking whether you did it in your reply brief. I'm asking whether you put it to the trial judge. I don't recall, Your Honor. And I would have to go back. If you didn't, is there a waiver of the materiality point? No, I don't think. Under New Jersey law? I know you don't think, but let me, I wouldn't expect you to think that way. But can you give me any authority for the proposition that it's not necessary to raise the point at trial in order to preserve the point on appeal? No, not standing here, Your Honor. That's a good question. Thank you. Let's see if I can figure out an answer in the few minutes that I'm sitting down. Kelsey, you have about almost six minutes left. Did you want to reserve? Yes, Your Honor. You may do so. Thank you. Good morning, Your Honors. If you'll please accord Philip Tensor on behalf of EPISET. What the doctors have done here is they've conflated the issue of the right to use this ointment for treating their patients with their obligations underneath the contract to provide to EPISET notice of improvements or different indications of the ointment. Let's go to the duty to notify. Yes. The duty to notify is not of any new development. The duty to notify is very strictly set out as a modification of the use as an improvement if it infringes on one of the patented uses. Now, the district court found that that was a nonsense second phrase. It couldn't possibly be used. Do you agree with him on that? I do agree, Your Honor. You suggested it to him. Yes. Do you think you're right? I do. Let me put you this question. Suppose Dr. Flores, instead of using the ointment with ketamine for burns, which is not one of the six indicated uses in the patent. Correct. It's outside the indicated uses of the patent. You're with me on that, right? It's not one of the claims. That's correct. had decided to alter the composition in the ointment, reducing the ketamine or increasing the ketamine, or instead of putting it on topically by the person burned, had injected it or sprayed it. That would be a different use, and that would infringe the patent. And that would be a notifiable modification of the patent. So was the trial judge correct in his interpretation of this second phrase as being a nonsense? Your question asks a false premise. No, it puts a false premise. But it asks for if, in fact, they change the level of ketamine, the first claim of the patent has a specific range. All right. As long as it falls outside of that range, it no longer infringes the patent. And, therefore, your question asks for it can't infringe the patent if it falls outside the range. So if it uses more ketamine that's called for in the patent or less ketamine that's called for in the patent, there would be no infringement. Well, if there's no infringement, would there be a requirement to notify it? I think that's the point that Judge Bay is striving at. Yeah. And I would say, yes, there would be a requirement. Any change? Why? Well, because otherwise this phrase has no meaning. This clause would have no meaning. Because there's no such thing as having a modification that infringes. Sure there is. If there's a range of ketamine and they're at the bottom of the range and they change it to the top of the range, it still infringes the patent. Or if they use the identical formula on some other type of problem, it very well could infringe the patent. And I have a question, though, about New Jersey law. Yes. Do you agree in theory with opposing counsel that in New Jersey, if a contractual provision is ambiguous, it becomes a question for trial, for the trial effect? I haven't looked at that issue in particular, Your Honor, but I don't believe that's the case. I believe the case is consistent with California law, that the interpretation of a contract is a matter of law and not a factual question. All right. I have another New Jersey law question, which is I gather from the briefs that if the party that wishes to sue under the contract has him or her or itself been in material breach, then an action will not succeed and may be dismissed. But doesn't the defendant have the burden to demonstrate a material breach that would kick the plaintiff out of court under New Jersey law? I believe so, Your Honor. Okay. So if there is no proof whether the breach that's alleged here by you is material, then the risk is with you. That is, if you don't prove that the breach was material, you have to go to trial, is the way I would interpret that, if you have the burden to demonstrate materiality. Well, I would say that I believe that that evidence was before the Court, Your Honor. In fact, the evidence was that from the party, from EPICEP's representative who negotiated the contract and entered the contract, Mr. Golikoff, was in fact that that provision was to avoid the very situation we have here, that the doctors identify some other use for their ointment and then fail to provide that to EPICEP. So no matter how trivial the use, in your view, that is always a material breach as a matter of law? I wouldn't say no matter how trivial. Here we're talking about a completely different indication, burn victims. Well, but follow the question that Judge Graber put you. No matter how trivial? Because if it's not no matter how trivial, then the question is was it trivial or was it not trivial as a matter of law? I would think that any change or modification or improvement or conception, as the Court found, would in fact have a duty to disclose it to EPICEP, regardless of how trivial it was. Because who knows trivialities in the mind of the beholder?  I don't see how you can take that position. Because if let's say there's a notification provision within, I forget, is it 10 days? I think it's or it doesn't matter. Let's say just pretend it's 10 days. And it arrives on day 11. So the plaintiff is now out of court because that breach is, even though trivial, is material as a matter of law? Or does that become a factual issue as to whether a breach matters? I think the question is here you're talking about whether or not this clause is material versus whether an improvement or a change is material. No, I was actually trying to reach the second point. And maybe my question wasn't clear. Assuming right now that there is this requirement in the contract and that there was a breach of it, my question is a factual one. That is, if it's not obvious, if you were supposed to send 1,000 barrels of oil and you sent none, you know, that's probably material. If you were supposed to send 1,000 and you miscounted and sent 999, it's not clear whether that's material. So I guess my question factually is why isn't that an issue of fact, even if you're right about the meaning of the contract? Well, I think because the benefit of the bargain here was these doctors were the ones who invented this ointment and identified certain specific pains that it could be treated. And as was explained to you by doctor's counsel, it was used in a very experimental fashion. And as they continued to experiment with this drug on their patients, my clients contractually had the right to benefit and learn from that. And the doctors agreed under the contract to provide notice of that within, it's actually 30 days, looking at the contract. And so I don't think there's really, it's not within the doctor's purview to decide whether this new indication is trivial or not trivial. Suppose there were evidence available that your own doctors on deposition would say, that's nice that they developed a burn use, but it's of no practical effect at all because we have NP1, which is much better. And not only do we have NP1, but we have NP1, which is ours, and we don't have to give any royalties to Crowley and Flores. Suppose he said that. In other words, yeah, they should have told us, but we couldn't care less. Would that be a matter of fact? I don't think so, Your Honor, because that's a decision ultimately that EPICET can decide what to do with the information. It doesn't change the materiality of the obligation under the contract. So any new development, even if it could be used only for one patient in the whole wide world, and it could only be used once because that patient couldn't tolerate it a second time, that would be a material breach of this contract. That's your position. It has to be your position. It is my position, yes. Counsel, you heard counsel for the doctors discuss improvement. What is your interpretation of the word improvement and what should we look to to determine that? Well, the definition is any modification of the invention invented, conceived, or reduced to practice. So in this case we have seven claims. And to me it's any kind of what the purpose of the testimony said was to understand, as these doctors continued their right to use the product, to use their ointment on patients, to benefit from that use. So any time that the doctors provided the ointment or changed a modification to the formula to a patient that was outside of the scope, I think that would be an improvement, as contemplated underneath the contract. And you'd discard as absurd the words provided such modification or the use thereof would, if unlicensed, infringe United States patent number blank and United States patent number blank. I think the lower court was right when it said it infringed the right of EPICEP to those patents. That's what the court found would make sense. The right of? EPICEP. Why isn't that a question of fact? Because I think it's out of contract interpretation. Interpreting this clause and what it means in the application to the parties is a question of law and not a matter of fact. I didn't quite get your point. You would interpret the text to add the words infringe by EPICEP? No, infringe the rights. In other words, the rights of this agreement. Infringe their rights. Because they've licensed these two patents. What would that add to that proviso? That's what the lower court found. The lower court found that that proviso was absurd and impossible of application. But, of course, I don't believe that. I don't agree with the court on that from the questions I've put you. Understood. Let me go to a more fundamental point. And that is that this patent was for a particular ointment. Now, in the initial studies that EPICEP conducted, the undisputed evidence is that the ointment was not stable. In order to get FDA approval of a drug, you have to have stability for 12 months at a minimum. This ointment, the doctor's formula, broke down after four months. That's undisputed evidence. As such, there can't really be a breach of contract here because you can't bring to the FDA a drug theory or a potential drug application that doesn't meet FDA requirements. The 12 months requirement of stability could not have ever been met with this ointment. That's one reason why EPICEP, as it was going through the initial process, decided to go with a clean formula that was stable. But that may have to do with whether there are damages available in the action, not whether the action can be brought, doesn't it? Well, it doesn't matter. I'm not saying that they couldn't bring an action. I'm just saying they can't prove a breach of the contract because the obligations here was to try to file an NDA within four years or an IMD within two years. Was this fact of instability proven by affidavits in the district court? And if so, would you kindly give me the citation? It was. Yeah, yes, absolutely. It's in the Declaration of Mr. Talbot. Jack Talley. Evidence to justify the failure of EPCET to procure the FDA certification. Correct. And it's in paragraph seven of Jack Talley's declaration in support of the motion for summary judgment. All right. Now, was that stipulated, too, by the plaintiffs, that it was unstable? Or is it just evidence by Mr. Crowley saying it was unstable? It's just evidence that was testified to and declared in his declaration. It's only evidence, right? Because you had a joint statement of undisputed facts. Correct. Is that one of the statements? Was that one of the facts? Undisputed? The only fact on the stability was that the joint statement was that Dr. Crowley participated in those studies. That was the only joint statement. So Judge Lorenz has, unlike many other district judges, requires a joint statement of undisputed facts and doesn't ask the parties to submit a separate statement. So just so I have you straight, the claim that the FDA approval could not be obtained was justified by Jack Crowley or Jack Talley. Talley. Cowley. He's the CEO. On the basis that the potion was unstable and could not be presented, and that fact was affied by Mr. Jack Crowley or Talley. Talley. And was not disputed by the other side? No. Not disputed by the other side. The other side had no expert to dispute it. They had no factual witness to dispute it. There's no basis to even go to trial on the issue. They have no evidence on the other side of it. Thank you, counsel. Your time has expired. Thank you. Ms. Larson, you have some reserved time. Going back to the issue of materiality, Mr. Talley said in his declaration supporting the motion for summary judgment that they stopped all development in 2001 not because of these breakdown in creams and everything, because it was a method patent. And no company would develop a method patent with such resources. And in my opposition, I said, well, that's a new fact. That was never raised in his deposition. And I have all kinds of excerpts showing the contradictions with his deposition testimony. Going back to that particular issue as to the method patent, Mr. Golikoff, who we included excerpts of his deposition, said, I knew it was a method patent. It says so on the face of it. But we don't get patents just for the one purpose. It becomes part of a portfolio. So this whole concept that within six months that the cream or that because it was an ointment and a cream was preferable, they were working on that. If that was the case, if that was the legitimate reason to stop all, which is not what he says in his separation. He says we stopped because we didn't have the funds, different reason. Number two, I never would have committed those resources as a method patent, which is my point. Let's get to the jury to contradict this. But if that was the case, why from 2001 through 2004 were letters coming from all the people authorized by Mr. Talley saying we continue to develop your patent? Why didn't they say it stinks, here, have it back? So no one ever said, oh, by the way, we're having stability problems and therefore we're never going to use it. No one ever said in those letters or e-mails, oh, by the way, it's a method patent, so we're never going to develop it. Everybody knew it was a method patent. Was there any evidence by Dr. Crowley and Mr. Flores, Dr. Flores, that the potion was not unstable? Yeah. We had excerpts of testimony from Golikoff himself that we attached that said that that was an issue that they could work on unresolved. So it was not an undisputed. So Golikoff is evidence disputing the assertion made by your learned friend. Yes. He said the preferable method was, no question, was what, as Mr. Tenzer testifies, I mean testifies, just stated, argued. He doesn't kind of testify in ways, but we get along pretty well, so it's hard to. But anyway, to go back to the point, but they were working and seeking to improve it. No one testified until the suggestion in the motion for summary judgment that we were stopping all development and not seeking an IND, and we were not going to file an independent application, okay, or we were not going to file an NDA with the FDA because of this issue. That was never told the inventors. That would have been a whole new twist on it had they been told that. So that's kind of a fact that is, well, if that's the case, why didn't you tell us, which goes back to Fenning. On the other issue, on the improvements, on the notice and how material that is, well, how material could it be if Mr. Talley's declaration supporting the motion for summary judgment is to believe, be believed. He's saying we never would have committed, we didn't develop, we didn't have the resources, but I didn't, wasn't, I made a decision not to put the resources in this product because it was a method patent. Well, then, who cares whether he gave notice to the improvements or not? It's a contradictory position. How material could the improvements issue? Why didn't they just say, oh, well, you're not entitled to this because of this improvements issue. And all of the e-mails and the communications going back and forth with their attorney Phillips and the attorney from Jones. No one ever said, oh, by the way, why are you even talking about terminating this contract based upon our breaches? You haven't satisfied it because there were improvements that occurred. So it just seems that the actions of EPCET itself belies this argument that all of a sudden some experimental use of the patent, some experimental use in his home office now allows them to do whatever they want. And going back to that Emerson cite, the Emerson cite is very specifically that once a court decides ambiguity, and it's true, the judge didn't say ambiguity, he said convoluted, but it was pretty clear that he couldn't find meaning, that it becomes a jury issue. Let me get you the specific cite. And that's Emerson 253F3159 at pages 163, 164. The court said, it is Hornbook law that if the relevant terms in a contract are ambiguous, the issue must go to a jury. Well, the court said the terms were convoluted as to improvements. I would further say it's convoluted as to whether a failure to give notice triggered, constitutes such a material breach that it triggered all rights under the contract. All right. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision. Thank you, Your Honor. The court will adjourn.
judges: O'scannlain, Graber, Bea